



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Clinton J. Fuchs
*Assistant United States Attorney*
Clinton.Fuchs@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4893
MAIN: 410-209-4800
FAX: 410-962-3124

March 18, 2014

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 0 3 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____           DEPUTY

Pat Woodward, Esq.
1783 Forest Drive
Suite 330
Annapolis, MD 21401

Re:   Plea Agreement in *United States v. Rodney Ellis, et al.*
      Criminal No. WDQ-13-0192

Dear Mr. Woodward:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **March 24, 2014**, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.      The Defendant agrees to plead guilty to Count One of the Superseding Information now pending against him, to wit: conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      a.      Between March 2013 and April 8, 2013, in the District of Maryland, an agreement existed between two or more persons to violate the federal drug laws by possessing with the intent to distribute 500 grams or more of cocaine, a schedule II controlled substance; and

1

b.      the Defendant knowingly joined in that agreement.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for 40 years, with a mandatory minimum 5 years imprisonment, followed by at least a four year, but not greater than five year, period of supervised release, and a $5,000,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Forfeiture of Firearm

4.      The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following firearms and ammunition:

FN Police Issue, .32 caliber, semi-automatic handgun, bearing serial number 261769, and ammunition

Ruger P89, 9 millimeter, semi-automatic handgun, bearing serial number 31043907, and ammunition

## Waiver of Rights

5.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise

unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

<u>Advisory Sentencing Guidelines Apply</u>

        6.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

7.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

      a.      Statement of Facts

In March 2013, a confidential source of information ("CS") working for the Baltimore Police Department ("BPD") and the Drug Enforcement Administration ("DEA") met with Greyling Chase, at a location in Baltimore City. During the meeting the CS proposed that he and Chase rob a drug trafficker that the CS stated would have a large quantity of narcotics. Unbeknownst to Chase, the drug trafficker was fictional. Chase agreed to commit the robbery and arranged to contact the CS at a later date.

On March 29, 2013, the CS met with Chase at a location in Baltimore City to discuss the planned robbery. During the meeting, which was audio and video recorded, the CS told Chase that the target drug trafficker would have approximately 10 kilograms of cocaine in a "stash house" in Baltimore City and that he and Chase could rob the "stash house" and split the stolen cocaine evenly between them. The CS asked Chase if he had a firearm available to commit the robbery and told Chase that it might be necessary to kill the target trafficker. Chase confirmed that he would bring a firearm to the robbery and agreed that it might be necessary to kill the target. Chase also agreed to enlist an associate to help commit the robbery.

A short time later Chase contacted the Defendant, Rodney Ellis and enlisted him to participate in the robbery. On April 5, 2013, the CS met with Chase and Ellis at a location in Baltimore City. During the meeting, which was audio and video recorded, the CS explained how the robbery would be committed, confirmed that the target trafficker would have approximately 10 kilograms of cocaine and reiterated that he (the CS) would keep half of the stolen cocaine and that Chase and Ellis could keep the remaining half. Ellis agreed to take part in the robbery and to bring a firearm. Thus Ellis agreed that he and Chase would receive at least 3.5 but less than 5 kilograms of cocaine as a result of the robbery. The CS also told Ellis that it might be necessary to kill the target drug trafficker to effectuate the robbery; Ellis confirmed that he was willing to do so.

On April 8, 2013, the CS met with Chase and Ellis at a location in Baltimore City in order to commit the planned robbery. The CS again explained how the robbery would be committed and Chase and Ellis confirmed that they were prepared to take part. The CS left the area (ostensibly to locate the target stash house) and then called Chase and Ellis a short time later to direct them to the "stash house" location. Chase and Ellis began driving towards the location provided at which time Chase's vehicle was stopped by investigators. A search of Chase's vehicle recovered a Ruger P-89 9mm handgun and a FN-9 .32 caliber handgun. Prior to the recovery of these firearms by investigators, Ellis and Chase possessed both weapons and did so in furtherance of their conspiracy to rob a person they believed to be a drug trafficker.

Ellis was subsequently Mirandized and agreed to be interviewed. During that interview, Ellis admitted that he planned to participate in the robbery of the cocaine "stash house" and that he understood that firearms would be used to facilitate the robbery. Ellis also admitted that he had obtained a firearm that he planned to use to facilitate the robbery.

The parties stipulate that Ellis agreed with Chase to obtain at least 3.5 but less than 5 kilograms of cocaine in order to distribute the narcotics.

      b.    Guideline Stipulations

The parties stipulate that the **base offense level is 30** pursuant to U.S.S.G. § 2D1.1(c)(5), because, during the period of the conspiracy, the Defendant conspired to distribute and possess with the intent to distribute at least 3.5 but less than 5 kilograms of cocaine. The parties further agree that the offense level is **increased by two levels** pursuant to U.S.S.G. § 2D1.1 because the Defendant possessed a firearm in furtherance of his possession with the intent to distribute cocaine. Therefore, the Defendant's **adjusted offense level is 32**

      c.    Acceptance of Responsibility

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Based on the foregoing, the parties agree that the Defendant's **final adjusted offense level is 29**.

    8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute. If the Defendant intends to seek a sentence outside the final advisory guideline range, the Defendant agrees to notify this Office of the factors under 18 U.S.C. § 3553(a) on which the Defendant intends to rely no later than fourteen (14) days prior to the date of sentencing.

<u>Obligations of the United States Attorney's Office</u>

    9.    At the time of sentencing, this Office will make a recommendation for a sentence within the final adjusted guidelines and will move to dismiss any open counts against the Defendant.

10.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any **sentence above the advisory guidelines range resulting from an final adjusted offense level of 29**; (ii) and this Office reserves the right to appeal any sentence below **sentence above the advisory guidelines range resulting from an final adjusted offense level of 29.**

c.    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this

Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Clinton J. Fuchs
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-20-14
Date

Rodney Ellis

I am Rodney Ellis's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3/20/2014
Date

Pat Woodward, Esq.